# Commonwealth v. Young.

*Election law—Primary elections—Conviction under Act of June 29, 1881 P. L. 128.*

The general intention of the act of June 29, 1881, was to put the rights of the voters, in party or primary election, under the protection of the law in the same manner that the rights of voters at annual elections have always been under such protection. The qualification of voters and the time, places and modes of holding such primary elections are regulated not by the statutes of the commonwealth, but by the rules of the party which to this extent is made part of the law of the land.

Every election required by the rules of the party for the purpose of as-

certaining the will of the electors upon the question of a nomination, is a primary election within the meaning of the act.

Where the rules of a party require a preliminary election of a judge and two inspectors, and that this preliminary election shall be presided over and be conducted by the county committeeman, such preliminary election is a primary election within the meaning of the act of June 29, 1881, and if the committeeman makes a false count of the ballots cast for judge of the primary election and makes a false certificate as to the person elected, he may be indicted under the act. Such an offense is also indictable at common law.

Argued Nov. 20, 1900. Appeal, No. 18, Oct. T., 1900, by defendant, from order of Q. S. Chester Co., overruling motion to quash indictment in case of Commonwealth v. Samuel S. Young. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Motion to quash indictment.

From the record it appeared the appellant was a member of the republican county committee of Chester county, representing the western precinct of East Fallowfield. As such member he was, under Rule 4 of the party, the executive officer of his precinct.

A primary election for the election of delegates to a county nominating convention was held in the appellant's precinct on June 3, 1899. The party rules required the appellant to call, and he did call, the assembled voters to order for the purpose of electing a judge and two inspectors to hold the primary election.

Two persons were nominated for the office of judge, the ballots of the voters were placed by them in a hat and were subsequently counted by the appellant and the result announced as follows: Broomall, 33; Moore, 43.

The defendant was indicted for falsely counting the votes for judge, and making a wrongful certificate of election. The bill of indictment contained two counts, the first, charging the offense under the act of June 29, 1881, and the second, at common law. The court overruled the motions, and at the trial refused to give binding instructions for defendant.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1) order overruling motion to quash. (3) Refusal to give binding instructions for defendant.

*D. Smith Talbot* and *J. Frank E. Hause,* for appellant.—The act is penal in its terms, and must receive a strict construction: Bucher v. Com., 103 Pa. 128.

The offense is not indictable at common law: Com. v. Wells, 110 Pa. 463; Leonard v. Com., 112 Pa. 624.

*Joseph H. Baldwin,* district attorney, with him *George B. Johnson* and *Thomas W. Pierce,* for appellee, cited: Leonard v. Com., 112 Pa. 622; Com. v. McHale, 97 Pa. 410; Com. v. Casey, 14 Pa. C. C. R. 389; Com. v. Weitzel, 41 P. L. J. 303.

OPINION BY W. D. PORTER, J., February 14, 1901:

The official position held by the appellant at the primary meeting of the voters of his election district is undisputed, and the jury have found that while acting in that position he was guilty of a wilful fraud in the discharge of his duties, by mak‑ing a false count of the ballots cast for judge of said primary election, and making a false return of the votes cast for officers of the said primary election, and certifying that the person who received the majority of the votes cast was not elected judge, and that the person who received the minority was elected. The first count of the indictment was framed under the provisions of the Act of June 29, 1881, P. L. 128. The second count charged the same alleged illlegal acts as an offense at common law. There was a general verdict of guilty as indicted. The able counsel representing the appellant frankly and correctly stated that but two questions arise upon this record:

1. Was the appellant an officer of a primary election within the meaning of the Act of June 29, 1881, P. L. 128?

2. If he was not such officer, can he be convicted at common law under the admitted facts?

The appellant was a member of the Republican County Com‑mittee of Chester county, representing the western precinct of East Fallowfield township. His official position and duties, so far as the same are here material, were defined by the rules of the party in this language: " The county committeeman of each borough, ward, precinct, township or election district shall be the executive officer of his precinct. . . . He shall put up the notices for the delegate elections at least five days before the time of holding them, and shall, if present, preside at the

delegate elections until a president is chosen." "At the hour named in the notices for the beginning of the delegate elections, the county committeemen of the respective districts shall call the assembled persons to order, who shall then elect a judge and two inspectors, who shall take and subscribe to the qualifications as directed by the act of assembly governing primary elections approved June 29, 1881." It is admitted that a convention of the party, to be composed of delegates from the several election districts of the county, had been duly called by competent authority, for the purpose of electing delegates to the state convention, and nominating one candidate for judge of the court of common pleas, one candidate for sheriff, two candidates for county commissioners, one candidate for county treasurer, and candidates for the several other county offices to be filled at the ensuing general election in the said county; that the appellant put up notices for the delegate elections in accordance with the rules of the party, and that at the hour named in said notice, and in accordance with the rules of the party, for the beginning of the delegate elections, the appellant called the persons then assembled to order and himself presided, received and counted the votes at the election for a judge and two inspectors to conduct the election for delegates to the county convention. Under the first recited paragraph of the rules it was the duty of the appellant to preside until a president should be chosen. In this case no president was chosen. This would seem to have been in accordance with the paragraph of the rules last recited, for that provides that when "the county committeemen of the respective districts shall call the persons assembled to order, they shall then elect a judge and two inspectors." Construing these paragraphs of the rules together, they clearly mean that the county committeeman shall preside during the proceedings for the election of delegates until a judge and two inspectors shall have been elected, and the "president" provided for in the first paragraph is but another name for a "judge," whose election is required by the second paragraph. In conducting the election for judge and inspectors, the appellant was discharging the official duties imposed upon him by the rules of the party; he had a right, if present, to preside at that election; he was present, and did preside. The rules of the party, as brought to the attention of.

the court, did not determine the manner of voting. There was no impropriety, however, in voting by ballot, as was done in this case. It has been established by the verdict of the jury that the appellant made a false count and an untrue return of that election; and, as a consequence, the judge and inspectors who passed upon the qualifications of those who voted for delegates were not the persons to whom the voters had delegated that authority. Was this election for a judge and two inspectors a primary election within the meaning of the act of June 29, 1881? The act is entitled, " An act to regulate the holding of, and to prevent frauds in, the primary elections of the several political parties in the commonwealth of Pennsylvania." The first section imposes duties upon "judges, inspectors and clerks or other officers of the primary elections, meetings or caucus, held for the purpose of nominating candidates for state, city and county offices within the commonwealth of Pennsylvania." The mischief which it was here sought to prevent or punish was fraud in those elections held for the purpose of determining what candidates a political party shall present for the suffrages of the voters at the general elections. The terms "primary elections, meetings or caucus" cover every assemblage which could be resorted to for the purpose of making a selection. The language of the second section includes all officers of a " primary election as aforesaid," referring to the language used in the first section. The meaning of the term "primary election" under the provisions of this act, does not seem to have been passed upon by either of our appellate courts. In Commonwealth ex rel. Cantrell v. Ridgway, 18 Phila. 519, Judge MITCHELL, who then sat in the common pleas, said: " The general intention of the Act of June 29, 1881, P. L. 128, was to put the rights of the voters in party or primary elections under the protection of the law, in the same manner that the rights of voters at actual elections have always been under such protection. The qualifications of voters and the times, places and modes of holding such primary elections, are regulated not by the statutes of the commonwealth, but by the rules of the party which, to this extent, are made part of the law of the land." In Commonwealth v. Boyle, 14 Pa. C. C. Reps. 591, AL-BRIGHT, P. J., held that an election for a delegate to a county nominating convention was within the operation of the act. See

also Gibbon's Nomination, 2 Lackawanna, L. N. 6, and P. & L. Dig. of Dec. 7881. In construing this act we must take judicial notice of the universal customs of the people with regard to the subject-matter. Primary elections for the purpose of nominating candidates for state offices come within the express protection of the statute. It was well known, at the time of this legislation, to all intelligent citizens, that candidates for state offices were. not directly voted for by the people in their respective election districts. The electors chose delegates to represent them in a state convention, and the nominations were ultimately made in that convention. The election of delegates by the people, however, was one step in the proceedings which resulted in the nomination by the convention. These elections were, therefore, held for the purpose of nominating the candidates of the party for state offices, and upon their result depended the choice of candidates. In order to constitute a primary election "for the purpose of nominating candidates for state, city and county offices," it is only necessary that the election shall be one step in the proceeding resorted to by the political party for the purpose of selecting its candidates. The word "primary" as used in this act means "preparatory or preliminary to something higher." The party may, under its rules, provide that nominations of candidates for office shall follow as the result of a number of successive elections. Whatever proceeding is resorted to is presumed to be for the purpose of ascertaining the will of the electors. Every election required by the rules of the party for the purpose of ascertaining the will of the electors upon the question of the nomination, is a primary election within the meaning of the act. The rules of the party under which the appellant acted required, as a preliminary to their voice being heard in the selection of candidates, that the voters should elect a judge and two inspectors. Unless such judge and inspectors were chosen, the subsequent proceedings were irregular, and the electors of the district might have lost their right to be heard in the making of nominations for county offices. We are of opinion that the election which the appellant held was the original or primary election, which the machinery of the party provided for the purpose of making nominations for state and county offices. We must, therefore, hold that the first count of the indictment was good, under the provisions of the Act of June 29, 1881, P. L. 128.

If the acts of the defendant did not constitute an offense under the statute, were they indictable upon the principles of the common law ? This question is to be determined not upon whether a precise definition of the offense can be found in the text books, or in the adjudged English cases, for elections of this character were unknown at the time of our separation from the mother country, but we must look to the principles upon which the common law rests. Many acts which, necessarily, tend to corrupt the government and affect public rights are punishable at common law, in the absence of any express statute providing a penalty. One class of such offenses is thus defined by Blackstone, chapter 13, volume 4 of Sharswood's edition: " The last species of offenses which especially affect the commonwealth are those against the public police or economy. By the public police and economy I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations. This head of offenses must, therefore, be very miscellaneous, as it comprises all such crimes as especially affect public society and are not comprehended under any of the before preceding series. These amount, some of them, to felony, and others to misdemeanors only." By way of illustration the learned author enumerates among the misdemeanors, first, common or public nuisances, of which a large variety are given, commencing with obstructions to public highways and ending with common scolds ; second, idleness ; third, sumptuary laws ; fourth, gaming,—and others not necessary to specify. A large number of these and other common-law offenses are now, and have been for many years, regulated by statute, but in most instances the statute is merely declaratory of the common law, the object being to define the crime with greater accuracy or to increase the punishment. · Mr. Bishop, in his work on Criminal Law, 1st ed., vol. 1, secs. 358– 368, says : " The government requires its subject to do more than simply abstain from attempting its overthrow. It requires them to give, when called upon, their active assistance to it, and at all times to refrain from casting obstructions in the way of its several departments and functions. Therefore, every violation

of these duties, being sufficient in magnitude for the law to regard, is criminal. . . . We see it to be of the highest importance that persons be elected to carry on the government in its various departments, and that in every case a suitable choice be made. Therefore any act tending to defeat these objects, as forcibly or unlawfully preventing an election being held, bribing or corruptly influencing an elector, casting more than one vote, is punishable under the criminal law." Every qualified voter at an election authorized by law is entitled to give one vote for every officer to be elected. The person who gives more infringes and violates the rights of other voters, and he who by a false and fraudulent computation of the votes apparently changes the result of an election, violates the rights of all the electors; and, in the absence of a statutory provision for such an offense, the common law gives an indictment: Commonwealth v. McHale, 97 Pa. 407; Commonwealth v. Silsbee, 9 Mass. 417; Commonwealth v. Hoxey, 16 Mass. 385. The Acts of June 19, 1891, P. L. 349, June 10, 1893, P. L. 419, and July 9, 1897, P. L. 223, regulating the nomination and election of public officers, recognize the rules and regulations of political parties and make them a part of the machinery provided by law for the election of public officers. These acts of assembly give to political parties which have polled the required number of votes, the right to certify nominations for public officers, and require the expenditure of public money to print the names of the candidates so certified upon the official ballot. In some parts of the commonwealth a regular certification of such nominations by one political party is equivalent to an election. It is clearly to the interests of public society that the proceedings which, under the rules of the several parties, lead up to the certification of these nominations should be free from fraud and corruption. These acts of assembly are election laws of the commonwealth, within the meaning of section 9, article 8, of the constitution: Leonard v. Commonwealth, 112 Pa. 607. Any wilful act, done with fraudulent intent, which falsifies the result of any election, which under the rules of the party, is preliminary to the certification of such nominations, must, necessarily, affect public society. The crime is not merely against the voters of a particular party, but it is against all electors in whose hands the official ballot is placed, and against

the public, whose money is expended in the printing of a ballot, the nominations upon which are tainted with fraud. In the absence of a statute such a crime is indictable at common law.

The judgment is affirmed and the record is remitted to the court below with direction that the sentence be carried into effect.