# Winston, Appellant, *v.* Moore.

*Constitutional law—Elections—Power of legislature to regulate —Primary laws—"Free and equal" elections—Election of judges— Abolishment of party nominations—Local and special regulations —"Uniform" election laws—Act of July 24, 1913, P. L. 1001.*

1. The legislature has the power to regulate elections, to prescribe the form of the official ballot, to provide in what manner candidates shall be chosen and what names shall be printed on the ballot as a result of the primary. Errors of judgment in the execution of the legislative power, or mistaken views as to the policy of the law, or the wisdom of the regulations, do not furnish grounds for declaring an election law invalid unless there is a plain violation of some constitutional requirement.

2. The declaration in the bill of rights that elections shall be free and equal means that the voter shall not be physically restrained in the exercise of his right of franchise by either civil or military authority, and that every voter shall have the same right as any other voter.

3. The provision in the Act of July 24, 1913, P. L. 1001, which limits the names of candidates to be printed on the official ballot to the two who polled the highest vote at the preceding primary, is not in violation of the Constitution.

4. The provisions of the Act of July 24, 1913, P. L. 1001, which require a candidate for nomination to file with his petition an affidavit stating his residence, his post office address, his election district, the name of the office for which he is a candidate, and other matters relating to his candidacy, are not such restrictions on the rights of the electors as to justify the courts in declaring the act void,

5. An election law is not unconstitutional because it abolishes party nominations for certain offices. The organic law is silent upon the right of the parties to make nominations for offices, and

hence the legislature necessarily has a very wide discretion in such matters.

6. The section of the Act of July 24, 1913, P. L. 1001, providing in substance, that when only one person is to be elected to a particular office, and there are several candidates at the primary, the one who receives more than one-half the total vote polled for such office, and more than one-half of the number of ballots cast in the political district or division, such candidate shall be the sole nominee for the office, and his name alone shall be printed as a candidate upon the official ballot, is not so unreasonable and discriminatory as to amount to a violation of the elector's constitutional rights.

7. The Act of July 24, 1913, P. L. 1001, which relates only to the office of judge, and provides a method of electing judges throughout the Commonwealth, does not offend against Article VIII, Section 7, of the Constitution, providing that "all laws regulating the holding of elections shall be uniform throughout the state." Uniform operation means that the same law shall apply to all persons placed in the same circumstances, and a law which operates upon every person who is a candidate for the office of judge is uniform.

Argued Feb. 25, 1914. Appeal, No. 78, Jan. T., 1914, by plaintiffs, from decree of C. P. No. 1, Philadelphia Co., Dec. T., 1913, No. 4856, entering judgment for defendants on case stated in case of John C. Winston, Richard L. Austin, John Hampton Barnes, Russell Duane, Samuel S. Fels, Charles L. McKeehan, J. Henry Scattergood, John Walton and George Woodward v. Robert J. Moore, John J. Powers, and Frank J. Gorman, County Commissioners for the City of Philadelphia, and the Commonwealth of Pennsylvania, Intervening Defendant. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Case stated to determine the constitutionality of the Nonpartisan Ballot Act of July 24, 1913, P. L. 1001. Before BREGY, J.

The case stated was as follows:

The parties to this litigation agree as follows:

1. This case shall be decided as if the facts herein

stated had been duly averred in a bill in equity and an answer thereto had been filed, admitting said facts, and submitting the questions of law involved to the court for decision.

2. Plaintiffs are citizens, residents and taxpayers of the State of Pennsylvania, City and County of Philadelphia.

3. Defendants are county commissioners of the County of Philadelphia.

4. Defendants are about to, and unless restrained by the court will, spend money of the county in the printing of official nonpartisan ballots and other election material, under the provisions of the Act of July 24, 1913, P. L. 1001, for use at the forthcoming primary election to be held within the State of Pennsylvania, on the third Tuesday of May, 1914, and in preparation for the nonpartisan nomination of judges at such primary under the terms of the said act.

5. It is agreed that if the Act of July 24, 1913, P. L. 1001, entitled, "An act to regulate nominations and elections for all elective offices of cities of the second class and all offices of judge of a court of record; providing for nonpartisan nominations and elections for said offices: abolishing certain existing methods of nomination in such cases and the use of party or political names or appellations at elections with respect to said offices; imposing certain duties upon the Secretary of the Commonwealth, county commissioners, and election officers and clerks; and providing penalties for the violation of the provisions thereof, and the punishment of certain offenses," is constitutional, judgment shall be entered for the defendants; if the said act is unconstitutional, an injunction shall issue to restrain defendants from printing any nonpartisan ballots or spending any money of the county under the provisions of the said act, either party to have the right to appeal as in other cases.

The court below entered judgment for defendants. Plaintiffs appealed.

*Error assigned* was the judgment of the court.

*Thos. Raeburn White,* and *John G. Johnson,* for appellants.—The Act of July 24, 1913, P. L. 1001, commonly known as the Nonpartisan Ballot Law, is unconstitutional and void for two reasons: First, because it interferes with the freedom and equality of elections; second, because, relating exclusively to the office of judge, it is special legislation.

The law is a denial, qualification or restriction of the elector's right, and is discriminatory in its operation: Independence Party Nomination, 208 Pa. 108; Oughton v. Black, 212 Pa. 1.

The provision of the law which limits the names to be printed upon the official ballot to two candidates for each office is invalid: State v. Junkin, 85 Neb. 1; People v. Chicago Board of Election Commissioners, 221 Ill. 9.

Requiring each candidate to file an affidavit, stating that he is a candidate, is in violation of the Constitution: Dapper v. Smith, 138 Mich. 104; State v. Blaisdell, 18 N. D. 55.

·· The abolition of party nominations is invalid: State v. Junkin, 85 Neb. 1; Murphy v. Curry, 137 Cal. 479; Hopper v. Britt, 204 N. Y. 524 (S. C. 203 N. Y. 144); State v. Phelps, 144 Wis. 1.

The act is special legislation.

*James Gay Gordon,* with him *George Quintard Horwitz,* Special Counsel, and *John C. Bell,* Attorney General, for appellees.—The Nonpartisan Ballot Act is not an election law with the purview of the constitutional provisions invoked by the appellants, i. e., is not a law regulating the holding of elections by the citizens, nor a law for the opening and conducting of elections; but, on the contrary, is merely an act providing a method for making nominations to the office of judge of any court of record; and hence the aforesaid constitutional provisions have no application to it: Leonard v. Common-

wealth, 112 Pa. 607; Com. v. Young, 16 Pa. Superior Ct. 317; Com. v. Tucker, 23 Pa. Superior Ct. 632.

Even if this court should be of opinion that the Nonpartisan Ballot Law is an election law to which the said constitutional provisions are applicable, it does not interfere with the freedom and equality guaranteed in all elections, nor is it destructive of the uniformity required in all laws regulating the holding of elections by the citizens: Woods's App., 75 Pa. 59; DeWalt v. Bartley, 146 Pa. 529; Gilbert's Est., 227 Pa. 648; In re Greenfield Ave., 191 Pa. 290; James Smith Woolen Machinery Co. v. Browne, 206 Pa. 543; Searight's Est., 163 Pa. 210.

Even if this court should be of opinion that the Nonpartisan Ballot Law is an election law to which the constitutional provisions in question are applicable, and that the act in its operation will be destructive of uniformity in election laws, yet it is not a prohibited local or special law for opening or conducting elections, because it is based upon proper classification: Ayars' App., 122 Pa. 266; Com. v. Mathues, 210 Pa. 372.

OPINION BY MR. JUSTICE ELKIN, March 16, 1914:

The purpose of this proceeding is to test the constitutionality of the Act of July 24, 1913, P. L. 1001, known as the Nonpartisan Ballot Law. The learned court below sustained the act and refused the injunction. Does the act thus assailed represent a valid exercise of legislative power? If it does, courts cannot declare it invalid, because it may prove to be unwise, or of doubtful expediency, or that it may not be effective in correcting the evils intended to be remedied, or for any other reason not based upon a subversion of constitutional rights. In the consideration of this question we start with all presumptions in favor of the validity of the act. The burden is on those who assail it to show what provisions of the act are in conflict with the organic law, failing in this the statute stands. When the constitutionality of a statute is involved in a proceeding before

the courts, the question of legislative power is funda-
mental to the inquiry, and in this connection it must not
be overlooked that the power of the legislature to make
laws is supreme except as limited by the Constitution.
When, therefore, the legislature has passed an act, and
it has been approved as required, it has binding force
and effect, unless it is clearly in conflict with the funda-
mental law. With this understanding of the underlying
principles applicable to a correct decision of the question
raised by the present appeal, let us inquire how the case
stands.

It is contended for appellants that the act is uncon-
stitutional and void for two reasons: (1) Because it
interferes with the freedom and equality of elections;
and (2), as applied to nominations for the office of judge,
it is special legislation. The first contention is based
upon the provision of the bill of rights which declares
that "elections shall be free and equal." It is argued
for appellees that this provision of the Constitution has
no application to a primary election held for the pur-
pose of nominating candidates, and that it was intended
solely to safeguard the rights of electors in the exercise
of their franchise in voting for persons or candidates
to be elected to public office at a general election. This
view is not without force and it finds support in the de-
cisions of several Common Pleas judges and to some ex-
tent in the opinions of our appellate courts: Com. v.
Young, 16 Pa. Superior Ct. 317; Com. v. Tucker, 23 Pa.
Superior Ct. 632; Com. v. Wells, 110 Pa. 463. Primary
elections such as have been provided for by the Acts of
1906 and 1913 were unknown in our State when the
present Constitution was adopted, at which time nomi-
nations of candidates for public office were made as a
general rule by conventions or caucuses authorized by
the rules of political parties, and in some instances by
popular vote, but, when this was done, the primary elec-
tion officers were appointed or selected according to
party rules. The regular election officers had nothing

to do with the holding of primary elections under the old system. This is a recent innovation, and one to be commended, because it affords greater protection against fraudulent practices and requires primaries to be conducted by sworn election officers. But no matter how commendable and meritorious direct primaries may be in nominating candidates for office, the question still remains whether they are elections within the meaning of the Constitution. There is at least room for difference of opinion on this question, indeed it may be remarked that divergent views do exist, but since the decision of this question is not vital to a proper determination of the rights of the parties to the present controversy, we refrain from finally deciding whether a primary election law comes within the purview of Art. I, Sec. 5, of the Constitution.

Assuming, however, in order that we may consider broadly the questions of constitutional limitations and legislative power raised by this appeal, that a primary held under the provisions of the Act of 1913, is such an election as is contemplated by the Constitution, and one in which freedom and equality are guaranteed in the exercise of the elective franchise, and thus treating the act in question as an election law, we are of opinion that nothing contained in its provisions is subversive of any right vouchsafed the individual elector by the bill of rights. The best discussion of the meaning of the words "free and equal" as applied to elections will be found in the opinion of Mr. Justice AGNEW, who expressed the prevailing views of this court in Patterson v. Barlow, 60 Pa. 54. What was said in that case applies with convincing force to the case at bar. The learned jurist who wrote that opinion considered broadly and discussed elaborately the rights of electors under the "free and equal" clause contained in the bill of rights. It is true that case was decided in 1869, several years before the adoption of the present Constitution, but the provision relating to the freedom and equality of elections has re-

mained practically unchanged since 1790, and therefore the meaning of the words "free and equal" as determined in the earlier cases should not be departed from now unless we are willing to say that what was then decided is clearly erroneous. This we are not prepared to do, nor has anything been suggested in the present argument to weaken our faith, in the soundness of the views then expressed. Among many other things it was there said: "How shall elections be made equal? Clearly by laws which shall arrange all the qualified electors into suitable districts (this being one of the questions involved in that case), and make their votes equally potent in the election; so that some shall not have more votes than others, and that all shall have an equal share in filling the offices of the Commonwealth. But how shall this freedom and equality be secured? The Constitution has given no rule and furnished no guide. It has not said that the regulations to effect this shall be uniform (a question discussed in another part of the present opinion). It has simply enjoined the duty and left the means of accomplishment to the legislature. The discretion, therefore, belongs to the general assembly, is a sound one, and cannot be reviewed by any other department of the government, except in a case of plain, palpable and clear abuse of the power which actually infringes the rights of the electors." The power to regulate elections is legislative, and has always been exercised by the law-making branch of the government. Errors of judgment in the execution of the legislative power, or mistaken views as to the policy of the law, or the wisdom of the regulations, do not furnish grounds for declaring an election law invalid unless there is a plain violation of some constitutional requirement.

The mandate of the Constitution is that elections shall be free and equal, but how shall they be made free and equal? The Constitution is silent as to the method of securing the desired result. The declaration itself would be a vain thing in the absence of positive law to

make the mandate effective. Who makes the law? The legislature. As was well said by Justice AGNEW in the case above cited the "Constitution has given no rule and furnished no guide" to determine how the freedom and equality of elections shall be enforced. It enjoins the duty in the abstract, but leaves the means of accomplishment in the concrete to the legislature. This necessarily gives the legislature a wide field for the exercise of its discretion in the framing of acts to meet changed conditions and to provide new remedies for such abuses as may arise from time to time. The power to regulate elections is a legislative one, and has been exercised by the general assembly since the foundation of the government: Patterson v. Barlow, 60 Pa. 54-75. Legislation may be enacted which regulates the exercise of the elective franchise, and does not amount to a denial of the franchise itself: Cusick's Election, 136 Pa. 459; DeWalt v. Bartley, 146 Pa. 529. The declaration in the bill of rights that elections shall be free and equal, means that the voter shall not be physically restrained in the exercise of his right of franchise by either civil or military authority; and that every voter shall have the same right as any other voter: Com. v. Reeder, 171 Pa. 505. The cases hereinbefore cited, and many others not cited, show conclusively that our courts have never undertaken to impale legislative power on points of sharp distinction in the enactment of laws intended to safeguard the ballot and to regulate the holding of elections. Indeed, so far as we are now advised, no act dealing solely with the details of election matters has ever been declared unconstitutional by this court. This for the reason that ballot and election laws have always been regarded as peculiarly within the province of the legislative branch of government, and should never be stricken down by the courts unless in plain violation of the fundamental law.

In the present case, it is pertinent to inquire, what provision of the Constitution has been clearly violated

by the Act of 1913. Appellants make answer by pointing to that clause of the bill of rights which requires "elections to be free and equal." We have already discussed this clause in a general way, but it remains to briefly consider the points now pressed upon us. It is contended that the act under consideration is discriminatory and restrictive in its operation because it limits the names of candidates on the official ballot to the two who polled the highest vote at the primary. There is nothing new or novel in the provision thus criticised. If there is to be an official ballot there must of necessity be a limit to the number of names printed thereon, else such a ballot would mean nothing. If everyone had the right to have his name printed on the official ballot, there would be no necessity or occasion to furnish such a ballot. The old law limited the number of names to be printed upon the official ballot and the legislature provided the method by which to determine what names should be so printed. Thus the legislature prescribed the limitations and the courts declared this to be a valid exercise of legislative power. The Act of 1913 simply prescribes another method of reaching the same result. The people vote directly for such persons as submit their names at the primary, and the two polling the highest number of votes are entitled to have their names printed upon the official ballot. There is no distinction in principle between this method of limiting the number of names entitled to be printed on the ballot, and the old system whereby the same result was secured through party nominations or by groups of citizens. In both cases the legislature prescribed the limitations, and in so doing, exercised a power clearly contemplated by the Constitution. We see no more abuse of the power in one case than in the other; its quality is the same under the new act as under the old law, but the methods provided for determining the result are different. Who can say that one method is lawful and the other unlawful? The Constitution says nothing about nominations, or

how candidates shall be chosen, or how many names shall be printed on the ballot. It furnishes no rule by which to accurately determine what the legislature may or may not do in the enactment of laws relating to such details in the exercise of the elective franchise. In the absence of any express constitutional limitation upon the power of the legislature to make laws regulating elections and providing for an official ballot, nothing short of gross abuse would justify a court in striking down an election law demanded by the people, and passed by the law-making branch of government in the exercise of a power always recognized and frequently asserted.

In a general way it may be said that elections are free and equal within the meaning of the Constitution when they are public and open to all qualified electors alike; when every voter has the same right as any other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself, or make it so difficult as to amount to a denial; and when no constitutional right of the qualified elector is subverted or denied him. Judged by these tests, the Act of 1913 cannot be attacked successfully on the ground that it offends against the "free and equal" clause of the bill of rights. It denies no qualified elector the right to vote; it treats all voters alike; the primaries held under it are open and public to all those who are entitled to vote and take the trouble to exercise the right of franchise; and the inconveniences if any bear upon all in the same way under similar circumstances and are made necessary by limiting the number of names to be printed upon the official ballot, a right always recognized in our State and not very confidently disputed in the case at bar.

We cannot agree with the learned counsel for appellants that the provision of the act which requires a candidate to file with his petition an affidavit stating his residence, his postoffice address, his election district, the

name of the office for which he is a candidate, and other matters relating to his candidacy, are such restrictions upon the rights of the elector as to justify the courts in declaring the act void. This duty is enjoined upon the candidate and not upon the elector. The rights of the voter are only incidentally involved. Under the old law certificates of nomination and nomination papers had to be verified by the affidavit, not of the candidate, but of those who had the authority or knowledge required to make it. The effect upon the rights of the individual voter was practically the same under the old law as it is under the new act. No man need be a candidate for office unless he chooses to be, and if he desires to become a candidate, it is difficult to see what constitutional right of the individual elector has been subverted by requiring a candidate to make affidavit to facts pertinent to his candidacy. This is what the Act of 1913 requires and certainly details of such a character relating to the nomination of candidates are clearly within the proper exercise of legislative power. The argument on this branch of the case could be addressed very properly to the legislature, but it is not convincing to us when asked to declare the act in question void on constitutional grounds.

Again, it is urged, that the abolition of party nominations for the office of judge is an unconstitutional restriction. But why? There is no provision of the Constitution which requires a party nomination for the office of judge. It is likewise true that there is no provision denying the right to make party nominations. The organic law is silent on the subject, and, hence, the legislature necessarily has a very wide discretion in such matters. Party nominations have in some instances been authorized by statute, and in the absence of statutory law, the courts have recognized and sanctioned the authority of political parties to make such nominations, not because the Constitution so requires, but as the most effective means of securing unity of political action.

This is not a constitutional right, but rather a political privilege, depending upon the will of the people, as expressed through their representatives in the legislature, or in the absence of positive statutory law, upon the will of party adherents, expressed through conventions, or caucuses, or otherwise, in accordance with the rules and regulations of political organizations. This is another way of saying that matters of this character are clearly within the exercise of legislative power, but if the legislature does not choose to act, then within the rights of political parties properly and lawfully exercised.

It is further suggested that the proviso to section thirteen makes the provisions of the act unreasonable and discriminatory by providing in substance that when only one person is to be elected to a particular office, and there are several candidates at the primary, the one who shall receive more than one-half of the total vote polled for such office, and more than one-half of the number of ballots cast in the political district or division, such candidate shall be the sole nominee for the office, and his name alone shall be printed as a candidate upon the official ballot. With the wisdom of this provision we have nothing to do. Our only duty is to determine whether it was within the power of the legislature to so provide. We have already decided that the legislature did not exceed its power in limiting the number of names to be printed upon the official ballot to the two candidates who received the highest number of votes at the primary, but it is insisted that this rule should not be applied to the proviso in question. It is difficult to draw an arbitrary line and say that a certain number of names shall be printed upon the official ballot and that a less number may not be without infringing the rights of the elector. If the courts should say that it is a lawful exercise of legislative power to limit the number of names to be printed on the ballot to the two candidates who received the largest vote at the primary, and that the printing of a less number of names is an un-

lawful limitation, this would simply mean the substitution of judicial for legislative judgment. Primarily this is a legislative and not a judicial duty. Courts can interfere only when the legislature acts in plain disregard of constitutional rights. This court has decided that the limitations imposed must not amount to a denial of the franchise itself, and this is the extremest limit to which our cases have gone. It cannot be reasonably said that the exercise of the elective franchise is denied to the individual voter by the limitation contained in the proviso to section 13. The elector may vote for the name thus printed upon the ballot, or he may write in the name of any person for whom he may choose to vote, and thus he is not denied the right to exercise the franchise of voting in accordance with his convictions, preferences, or sense of public duty. It is true that the candidate who receives more than one-half the votes polled in the election district at the primary has an advantage over all others, but this is an advantage given him by the votes of a majority of the electors who performed their public duty by attending the primary and exercising their right to vote. The elector who fails to vote at the primary, and thus disregards the opportunity afforded him under the law, is not in position to complain because of an advantage given the successful candidate by a majority of the voters who did attend the primary and performed their duty in this respect. This advantage results from a direct vote of the people, and those who are dissatisfied with the nomination thus made are not concluded by it, but may vote for a defeated candidate, or for any other person for whom they desire to vote, by pursuing the method pointed out in the act. In view of the wide discretion which the legislature has always exercised in the enactment of election laws, and the elective franchise not being denied any one, we are not prepared to say that this limitation makes the act unconstitutional and void. Even under the old system it often happened that there

was only one candidate for the office of judge, and indeed it may be confidently said, that such a situation will not more frequently arise under the new act than it did under the old law. This question in another form was very thoroughly discussed by our Brother Brown in Oughton v. Black, 212 Pa. 1. The underlying principle of that case is controlling here, and we need not reiterate what was there said by this court in sustaining the Act of June 10, 1893, P. L. 419, as amended by the Act of April 29, 1903, P. L. 338. After full consideration it was decided in that case that the legislature had the power to regulate the exercise of the elective franchise, and to prescribe the form of the official ballot and the manner in which it shall be voted.

This opinion is already too long but it is necessary to advert briefly to one more question. It is strongly urged that the act in question offends against Art. VIII, Sec. 7, of the Constitution, which provides as follows: "All laws regulating the holding of elections......shall be uniform throughout the State." What is meant by the word "uniform" as here used? A law is general and uniform if all persons in the same circumstances are treated alike: Davis Coal Co. v. Polland, 158 Ind. 607. Uniform operation means that the same law shall apply to all persons placed in the same circumstances: McCormick v. Rusch, 15 Iowa 127; McAunich v. Railroad Co., 20 Iowa 238. A law is general and uniform, not because it operates upon every person in the State, but because every persor brought within the relations provided for in the statute is within its provisions: Arms v. Ayer, 192 Ill. 601. The same rule has been recognized and applied in our own State. The question was raised in Dewalt v. Bartley, 146 Pa. 529, and decided adversely to the contention of appellants here. It is true that case did not consider the uniformity of an election law which applied only to the nomination and election of judges throughout the Commonwealth. But the principle is the same because an act which applies to judges as a

class cannot be said to be either special or lacking in uniformity. It applies to all persons in the same circumstances. It operates upon every person who is a candidate for the office of judge. It affects all candidates for the judicial office alike. Under the Constitution the judiciary is one of three coordinate branches of government, and certainly an act which relates to this entire body and operates upon the election of each member of it must be regarded as of general application and uniform operation throughout the State. In addition, it may be said, that even if this be not the proper test, but that the question must turn upon the rights of individual electors, the act operates upon all voters alike in the election of judges. The vote of one elector is as potent as that of any other elector at the primary, and the same may be said as to the general election because even then there is no distinction as to the right of each elector to cast his ballot. We, therefore, conclude that the Act of 1913, as applied to the office of judge, is a general law and of uniform operation throughout the State.

We rest this decision upon the ground that the legislature had the power to prescribe the form of the official ballot, to provide in what manner candidates shall be chosen, what names shall be printed on the ballot as a result of the primary, and that nothing contained in the Act of 1913 is sufficient to justify this court in declaring that the legislature abused its power by writing into the statute the limitations which it is here contended are unlawful restrictions of the elective franchise. If it were our duty to make the law, no doubt some of its provisions would be written differently, but we cannot declare an act void because in some respects it may not meet the approval of our judgment, or because there may be difference of opinion as to its wisdom upon grounds of public policy. Questions of this character are for the legislature and not for the courts. If the restrictions complained of in this proceeding are found to

be onerous or burdensome, the legislature may be appealed to for such relief, or for such amendments, as the people may think proper to demand.

Decree affirmed. Costs to be equally divided between the parties.