## Thompson, Appellant, v. Morrison, Secretary of Commonwealth

Argued August 31, 1945. Before MAXEY, C. J., DREW, LINN, PATTERSON and JONES, JJ.

*J. Charles Short, Joseph Sharfsin* and *Premo J. Columbus,* with them *Frank R. Hean,* for appellants.

*William M. Rutter,* Deputy Attorney General, with him *James H. Duff,* Attorney General, for appellee.

OPINION BY MR. JUSTICE LINN, September 24, 1945:
These two appeals are from decrees dismissing bills in equity in two suits against the Secretary of the Commonwealth, one brought by A. Marshall Thompson, the other by John Morgan Davis. The cases were heard together. Each plaintiff avers that he is the candidate of the Democratic party for the office of Judge of the Superior Court; that the defendant Secretary accepted and filed nomination papers tendered to him by the "American Labor Party, a political body, to the end that the names of the said W. Heber Dithrich and John C. Arnold should appear on the ballot or ballot labels at the municipal election to be held November 6, 1945, as the nominees of the said American Labor Party for the said office of Judge of the Superior Court . . ." Each plaintiff alleges that these nomination papers "were defective and not in conformity with the requirements of Section 951 of the Pennsylvania Election Code of 1937,

in that the candidate's affidavit appended to each nomination paper did not state that the said candidate's name had not been presented as a candidate by nomination papers for the said office to be voted for at the ensuing primary election but, to the contrary, stated that the said candidate's name had been presented as a candidate by nomination petitions for the same office to be voted for at the ensuing primary election. Plaintiff is informed and therefore avers that this deviation from the form of affidavit required by the Pennsylvania Election Code and prescribed by the Secretary of the Commonwealth was effected by the deletion of the word 'not' from the candidate's affidavit as printed on the prescribed form of nomination paper."

Each plaintiff prayed for an injunction restraining the Secretary from ". . . certifying the names of [Judges Dithrich and Arnold] as the nominees of the American Labor Party for the office of Judge of the Superior Court at the general election to be held November 6, 1945."

Defendant filed preliminary objections challenging the sufficiency of the bills. At the argument of these objections, answers on the merits were also filed at the suggestion of the court, in order that prompt disposition might be made as on final hearing.

With respect to the averment (quoted above) complaining of the inadequacy of the affidavit, the Secretary answered, inter alia, "Defendant admits the said affidavits stated that the candidates' names had been presented as candidates by nomination petitions for the same offices. Defendant denies, however, that this is a deviation from the form of affidavit required by the Pennsylvania Election Code and prescribed by the Secretary of the Commonwealth, for the reason that said form of affidavit so required and prescribed was designed to apply to nomination papers filed in behalf of those seeking nomination to offices other than the office of a judge of a court of record. Defendant further avers

that rather than have separately printed nomination papers to be used only by candidates for the office of judge of a court of record, the form of affidavit was prescribed by him so that it would cover all offices; and, in the event nomination papers were filed in behalf of a candidate for the office of a judge of a court of record, which candidate was also filing nomination papers or petitions of other political bodies or parties for the same office, appropriate changes in said affidavit could be made to fit that situation. Defendant further avers that such form of nomination papers and affidavits are commonly used for the nomination of individuals for divers offices, including that of a judge of a court of record; and, in such event, a candidate for an office other than that of a judge of a court of record would have to swear that his name had not been presented as a candidate by other nomination petitions or papers for the same office, whereas, a candidate for judge of a court of record who was a candidate on more than one ticket, since he is permitted by the Pennsylvania Election Code to run for such office on more than one ticket, would necessarily not be able to swear to the same affidavit without swearing to a false oath."

The cases were heard by the three judges of the court, sitting in banc; the bills were dismissed on August 24th; appeals were taken promptly and were argued in this Court on August 31st. As prompt decision was required in order that the ballots might be printed in time, orders were filed September 1st affirming the decrees appealed from. This opinion is now filed for the purpose of stating the reasons for our agreement with the learned court below.

The issue made by the quoted pleadings may be simply but substantially stated to be that plaintiff averred that the nomination papers were void because the candidates did not swear that they were not also candidates on another party ticket. They could not make such an affidavit because, in fact, they were candidates on

the Republican party ticket. Defendant relies on the provision of the election law which permits candidates for judge of a court of record to run on more than one party ticket, and asserts that Judges Dithrich and Arnold had the right to accept nomination on behalf of the American Labor Party and were therefore bound to state their plural candidacy in the affidavits.

The election law creates two classes of candidates. One class is composed of those who may not be candidates on more than one party ticket; the other is composed of candidates seeking election to the office of judge of a court of record. That classification meets the constitutional test of reasonableness. The people themselves have placed judges in a separate class: Constitution, Art. VIII, Sec. 3. One purpose of allowing those seeking judicial office to be candidates of more than one party ticket was to provide for the nonpartisan selection of judges.

In their brief, appellants present these four contentions: (1) "the papers . . . are not nomination papers as defined by law;" (2) there was "no right to file papers which are irregular and void on their face"; (3) the statute required the Secretary to reject defective papers; (4) equity has jurisdiction to require him to do so.

Agreeing with appellants' second and third contentions that there was no right to file papers "void on their face," and that the Secretary should reject such papers, we come to the other two contentions and shall first deal with the assertion that the papers "are not nomination papers as defined by law."

Appellants' argument is that while the papers, in form, are nomination papers, they are not so in fact because (1) section 951 of the Election Code provides for an affidavit stating, among other facts, that the candidate's name has not been presented as a candidate by nomination petitions for the same office, and (2) that affiants have not stated that to be the fact. Each affiant, on the contrary, states that his name had been presented

by nomination petition. The question is whether the contents of these affidavits in judicial nomination papers prevent their being nomination papers within the statute. Under the existing election law, voters, acting as a political body, may bring into existence a new political party, entitled to a place on the ballot, by a process which begins with their filing nomination papers on behalf of that political body, designating its candidates. The political body, known as the American Labor Party, desiring to nominate Judges Dithrich and Arnold as the candidates of that party, caused these nomination papers to be filed. As the offices to be filled were judicial, the candidates were in the second of the two classes, expressly authorized by the code to become the candidates of more than one political party. It was the duty of the Secretary to recognize their right to plural candidacy and to prepare such papers as the classification required. Section 201 (a), 25 PS section 2621, provides that the Secretary shall "determine, in accordance with the provisions of this act, the forms of nomination petitions and papers, expense accounts and all other forms and records, the form of which he is required to determine under the provisions of this act." Section 951, 25 PS section 2911, provides that nomination papers by political bodies "shall be in form prescribed by the Secretary of the Commonwealth, and no other forms than the ones so prescribed shall be used . . ." He could of course have provided separate forms for each of the two classes of candidates, one to be used by candidates for judicial office, and the other for candidates of the other class; instead, he appears to have provided a general form for both which might require adaptation, by the insertion or deletion of words, sufficient to meet the necessities of the class involved. It was apparently in accord with this view of his duty that he stated, in his answer to the bill, the practice of his office with respect to the forms of papers as quoted above. The provision in section 951, 25 PS section 2911, that a candidate's affidavit shall in-

clude a statement that "his name has not been presented as a candidate by nomination petitions for the same office to be voted for at the ensuing primary election nor has he been nominated by any other nomination papers filed for the same office" must be read in the light of the legislative classification of candidates. It must be confined to the class to which it is applicable. It applies only to candidates of the class who are not candidates for judicial office. Not only does this construction seem to be clear, but the interpretation suggested by plaintiffs would, by implication, nullify the nonpartisan purposes sought to be accomplished by the express provision that judicial candidates may be on more than one party ballot. The interpretation cannot be restricted to a construction that would deprive voters who are members of a political body desiring to nominate judicial candidates, of the right to nominate one who was already a candidate of some other party, because such discrimination against the voters who are members of that party would not only be unreasonable, but might render the provision, if so interpreted, unconstitutional: see opinions filed in *Independence Party Nomination*, 208 Pa. 108, 57 A. 344; *Winston v. Moore*, 244 Pa. 447, 91 A. 520. The Statutory Construction Act of 1937, P. L. 1019, 46 PS section 501, et seq., see Section 552, authorizes the courts to presume "that the legislature does not intend a result that is absurd, impossible of execution or unreasonable; that it intends the entire statute to be effective and certain; and does not intend to violate the constitution of the United States or of this Commonwealth." We must therefore reject the suggested interpretation on which plaintiffs rely.

Having concluded that plaintiffs have not shown the nomination papers to be void for want of adequate affidavits, we might leave the case. But as plaintiffs have attempted to justify their right to disregard the remedy provided by section 977, 25 PS section 2937, and to proceed by bill, and as defendant has insisted that nothing

alleged in the bill can support that substitution of one remedy for the other, we must deal with plaintiffs' fourth contention quoted above.

Equity has no jurisdiction in these cases. It is the duty of the legislature by appropriate legislation to provide regulations for elections to public office: *Patterson v. Barlow,* 60 Pa. 54, 75; *Winston v. Moore,* 244 Pa. 447, 91 A. 520; *Wilson v. Phila.,* 319 Pa. 47, 179 A. 553. Such regulations are embodied in the Election Code of 1937 as amended, 25 PS section 2600 et seq. If the regulations provide, as they have provided, how alleged infractions of the election law shall be dealt with, the procedure must be followed. If, by inadvertence or other cause, a complaining citizen elects not to pursue the statutory remedy, he must fail for want of compliance with the mandate of the legislature.

Section 976, as amended, 25 PS section 2936 (Pocket Part), provides: "No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—(a) it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; or . . . (d) in the case of nomination petitions, if nomination petitions have been filed for printing the name of the same person for the same office, *except the office of judge of a court of record,*[1] upon the official ballot of more than one political party, or (e) in the case of nomination papers, if the candidate named therein has filed a nomination petition for the same office for the ensuing primary, or has been nominated for the same office by nomination papers previously filed . . ."

Section 977, as amended, 25 PS section 2937 (Pocket Part) provides, in part: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination peti-

---

[1] Italics supplied.

tion or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed."

No objections were filed; the result, in the words of the statute, is that the "papers . . . shall be deemed to be valid." We need not discuss at length the right to proceed in equity to set aside these nomination papers, because the subject was considered in *Kane v. Morrison,* 352 Pa. 611, in which this court was asked to take original jurisdiction of a bill proposed to be filed by Mr. Kane against the Secretary of the Commonwealth and others, to set aside the papers which are the subject of the present suits on various grounds including that averred by the present plaintiffs. Among the reasons assigned in the opinion of the court, written by Chief Justice MAXEY, for refusing to take original jurisdiction, was that the election code provided a complete and adequate remedy. That conclusion was supported by consideration of section 977, supra, and by reference to section 13 of the Act of March 21, 1806, 4 Sm. L. 326, 46 PS section 156, and citation of cases considering the point; see also *Derry Twp. School Dist. v. Barnett,* 332 Pa. 174, 177-178, 2 A. 2d 758; *Barton v. Northampton County,* 342 Pa. 163, 168, 19 A. 2d 263, and cases cited in those opinions.

For these reasons the decrees were affirmed.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

The majority base the decision of the instant appeals on two grounds, viz., (1) that the respective affidavits of the candidates for nomination for the Superior Court on papers filed by the American Labor Party supply the requirements of the law in such regard, and (2) that equity is without jurisdiction of the controversy. I respectfully dissent as to both particulars.

In passing, one may perhaps be permitted to wonder whether this Court's decision on the merits of the first of the above propositions does not automatically deny the validity of the second. Ordinarily a court without jurisdiction of subject-matter is without authority to make any decision of substance in the cause. In any event, if there be no equitable jurisdiction of these cases, I think it is particularly unfortunate that a decision of the main question, as to the legal sufficiency of the affidavits required of judicial candidates for nomination by political *bodies,* was not left to an occasion when it can be raised in the manner and within the time which this Court now holds to be controlling. At its best, the present decision will constitute an open invitation to any candidate for judicial office to bring to his aid as many different nominating groups (i.e. political bodies) as he can supply with respective requisite signatures and a variety of supposedly inviting labels for them. The result will be a cluttering up of the *election* ballot for no better purpose than to multiply the number of times the particular candidate's name may appear thereon at the ensuing general or municipal election. Such a situation could proceed even to the point of threatening the availability of voting machines for use at an election. Assailants appear not to be lacking if there be a prospect of raising an obstacle. Cf. *Davidowitz v. Philadelphia County,* 324 Pa. 17, 20, 187 A. 585.

On the question of merit, I think that the affidavits of the candidates for nomination for judicial office on the papers filed by the American Labor Party are in open defiance of the requirements of the pertinent statutory provisions and that the Secretary of the Commonwealth violated his sworn legal duty when he permitted them to be filed.

The learned court below disposed of these cases exclusively on the ground that equity was without jurisdiction and expressly left undetermined whether the affidavits in question were a valid compliance with the

express requirements of the law pertinent to the circumstances. With the greatest respect for the views of my brethren, I think that, on that question, the majority opinion falls into error by failing to recognize and abide by the distinction which the legislature deliberately drew between nomination *petitions* of political *parties* and nomination *papers* of political *bodies* and that, as a result, this Court mistakenly reads into the applicable provisions of the Election Code (Secs. 951 and 976, in particular) matter which is not there and which, purposely, was not intended to be there.

The Election Code plainly reveals the intended difference between nominations by political parties and nominations by political bodies with a meticulousness rarely surpassed in legislative draftsmanship. Compare, for example, the contiguous clauses (d) and (e) of Sec. 976 (Act of June 3, 1937, P. L. 1333, Art. IX, 25 P.S. §2936). Furthermore, the intent which the legislature thus expressed so painstakingly has heretofore been judicially recognized and confirmed. In *Prugh v. O'Hara, Secretary of the Commonwealth,* 50 Dauphin County Reports 51 (1941), the late Judge Fox aptly said (p. 53), with respect to the Election Code of 1937, that "The legislature has drawn a distinction between a political party and a political body. . . . The matter is too clear for any prolonged discussion." (Underscoring is the author's). The learned judge further observed justifiably (p. 54) that "The language [of the Election Code] is clear and no other inference can be drawn from it than that the legislature used the terms political body and political party advisedly . . .". Cf. also *Commonwealth v. Antico,* 146 Pa. Superior Ct. 293, 302-303, 22 A. 2d 204.

Clause (f) of Sec. 910 of the Election Code (25 P.S. §2870) provides that the affidavit of a candidate for nomination by a political party shall aver, *"unless he is a candidate for judge of a court of record,* that he is not a candidate for nomination for the same office of

any *party* other than the one designated in such petition; . . . ." (Emphasis supplied). Thus by specific exclusion, a candidate for nomination by a political *party* for judicial office is not required to make the "single-party-nomination" affidavit (required of candidates for all other offices) but is left free, as theretofore, to seek nomination by more than one political *party*. With respect to nominations by political *bodies,* however, Sec. 951, par. (e), clause (5) (25 P. S. §2911), provides that there shall be appended to *each* nomination *paper* offered for filing an affidavit by the candidate averring "that his name has not been presented as a candidate by nomination petitions for the same office to be voted for at the ensuing primary election, nor has he been nominated by any other nomination papers filed for the same office". Nowhere in the statute is a candidate for judicial office, *who seeks nomination by a political body on nomination papers,* excluded from making the "single-party-nomination" affidavit required expressly by Sec. 951 (regardless of the office sought) of candidates for nomination on *papers* filed by a political *body.*

These pointedly differing statutory requirements with respect to candidate affidavits for nomination by political *parties* on *petitions* and by political *bodies* on *papers,* as above pointed out, were not mere inadvertent inconsistencies. They represent a clear expression of deliberate legislative intent as is still further confirmed by Sec. 976. That section expressly lays upon the Secretary of the Commonwealth the duty of examining any nomination petition, certificate or paper presented in his office for filing and immediately thereupon directs that,—

"No nomination petition, nomination paper or nomination certificate *shall be permitted to be filed if—* . . . (d) in the case of nomination *petitions,* if nomination petitions have been filed for printing the name of the same person for the same office, except the office of judge of a court of record, upon the official ballot of

more than one *political party;* or (e) in the case of nomination *papers,* if the candidate named .therein has filed a *nomination petition for the same office for the ensuing primary,* or has been nominated for the same office by nomination papers previously filed; . . .". (Emphasis supplied). The intended differentiation could hardly have been made more obviously apparent; nor the Secretary's legal duty, clearer.

There is, of course, ample justification for the legislature's permitting a candidate for judicial office to seek nomination on petitions filed in the primaries of any number of political parties. But, there is equally as much justification for the legislature's refusing a candidate for judicial office the privilege of multiplying his nominations by resorting to nomination papers filed by political bodies. It is unnecessary here to detail the reasons justifying the differentiation. It should be sufficient for present purposes that the legislature did make the distinction in terms which seem plain beyond possibility of misinterpretation. Nor does the distinction, thus legislatively made, discriminate against any one. It will hardly be disputed that, for all offices except judicial, political bodies may not file nomination papers for the nomination of candidates who are seeking nomination for the same office by a political party or who have been nominated for the same office on papers by another political body. Yet, I have never heard it suggested that the so-called Party-Raiding Act (now incorporated in the Election Code) is unconstitutionally discriminatory. Nor am I able to see any unconstitutional deprivation of one's right to stand for public office because of the denial to any group or political party of the privilege of nominating a candidate who has acted to have his name otherwise appear on a primary ballot.

In the case of the affidavits of the respective candidates for nomination for judicial office by the political body here involved, each candidate swore (and of course

quite truthfully) that he was a candidate for nomination by a political party for the same office. That affidavit was a manifest non-compliance with the requirement of clause (5), paragraph (e) of Sec. 951 which deals with the affidavit required of a candidate seeking nomination on nomination *papers* (candidates for judicial office notably not being excluded in such instance). Consequently, the Secretary of the Commonwealth by accepting and filing the American Labor Party nomination papers, with their deliberate non-complying candidate affidavits, violated his positive duty imposed by Sec. 976 which, as already appears, directs (without regard for the office sought) that "No nomination paper . . . shall be permitted to be filed if . . . the candidate named therein has filed a nomination petition for the same office for the ensuing primary . . .". Thus, the candidates' affidavits (not being amendable in the unalterable factual situation) were not only fatally defective because they were directly contrary to the statutory requirement in the premises but the Secretary of the Commonwealth, moreover, accepted for filing and accredited what the statute specifically directs shall not be permitted to be filed.

That action constituted an unlawful act. In *Commonwealth v. Antico,* supra, the Superior Court said (pp. 302-303) that "The Election Code of 1937 prescribed the procedure that must be followed by a political body to get its candidates on the ballot for a general or regular election. . . . The illegal procurement of a place on the ballot for the candidates of a political body, by violating the provisions of the Election Code, is an unlawful act, which interferes with a free and fair election, (Winston v. Moore, 244 Pa. 447, 457-8, 91 A. 520), . . ." The fact that the *Antico* case was a criminal proceeding would not make the action complained of any less illegal when questioned in a civil proceeding. See also *Prugh v. O'Hara,* supra, where Judge Fox said (p. 54) that where nomination "papers are defective, because they

have not complied with the provisions of the statute, . . . the papers cannot have the effect of placing such nominees on the ballot." Yet, that is the effect which the Secretary of the Commonwealth intentionally gave to the papers here in question which are obviously defective on the basis of the requirements of the statute.

If the action of the Secretary of the Commonwealth in respect of the nomination papers in question was violative of his bounden legal duty (as I believe it patently was), was the violation cognizable only at law on objections filed within the seven-day period as allowed by Sec. 977 of the Election Code? I do not think so.

Equity has jurisdiction to restrain the commission of acts contrary to law. The exertion of equity's power in such regard is not limited merely to cases where property rights are involved. The jurisdiction has been, and may be, exercised where a lack of redress otherwise, under the circumstances, threatens the public interest and welfare. And, we have it on the authority of *Commonwealth v. Antico,* supra, that "The illegal procurement of a place on the ballot for the candidates of a political body, by violating the provisions of the Election Code, is an unlawful act . . .". The Secretary's action in making possible the illegal procurement of a place on the ballot for the candidates of the American Labor Party was no less.

Thus, equity's jurisdiction to restrain or prevent the commission of an act contrary to law may be exercised where the acts complained of consist of violations of the election laws. In *Kearns v. Howley,* 188 Pa. 116, 41 A. 273, which arose on a bill for an injunction against the chairman and secretary of the county committee of a political party, no property right existed in the plaintiffs or in others as members of the county committee. The lower court took jurisdiction of the bill and granted relief notwithstanding that unincorporated associations were expressly excluded by the Act of June 16, 1836, P. L. 784, from the jurisdiction there granted equity to

supervise and control all corporations. In reversing, this Court said, (pp. 120, 121) that "The court below we think was misled into claiming for the courts of Pennsylvania enlarged chancery powers, because of the tendency of our late legislation [it was then 1898] to regulate primary elections and prevent fraud and corruption by the election officers. *It may be, if this bill had aimed to prevent a threatened violation of law by any of these officers, it could have been maintained. But there is no statutory injunction or prohibition directed to chairmen and secretaries of county committees; . . .".* (Emphasis supplied). True enough, the emphasized portion of the statement above quoted is a dictum but it is no worse for so being if the concession therein embraces, as I believe it does, a correct conception of the law.

In *Lamb's Nomination Petition,* 251 Pa. 102, 96 A. 255, where nomination petitions under the Act of July 12, 1913, P. L. 719, were set aside on petition to the court, it does not appear from the report of the case nor from the paper books or record on appeal whether the action was instituted within the five days allowed by Sec. 8 of the applicable statute (Act of 1913) for instituting proceedings to set aside any nomination petition. But even if it was so instituted, the case poses a very pertinent query. In the *Lamb* case, the nomination petitions which had been filed were for offices which, under the law, were not to be filled at the ensuing municipal election. Suppose the time for filing objections to nomination petitions (then five and now seven days) had elapsed without any one's having filed objections, would equity be powerless to save the citizens of the Commonwealth a large useless expense? Would its jurisdiction in such circumstances (a clear violation of the law) not be exercisable to prevent the appropriate county board or state official from certifying the abortive nominations for printing on ballots where they could have no ultimate valid effect?

Just recently, in *Koch Election Contest Case*, 351 Pa. 544, 41 A. 2d 657, where there were "uncontroverted violations of the Election Code by the [election] board", we authorized the filing of a petition *nunc pro tunc* for a contest of the result as certified by the election board notwithstanding that the petitioner had allowed the time for filing objections to pass without acting. Our action in the *Koch* case afforded a purely equitable remedy in order to prevent an apparent violation of the election laws, through the certification of an erroneous return of the count. The learned court below distinguished the *Koch* case from the present on the ground that the petitioner in that case had been lulled to sleep by the manner in which the election officers had failed to perform their statutory duty. Even so, what was said in the *Koch* case in relief of the petitioner from laches was not the basis for the jurisdiction but merely in exculpation of the supplicating petitioner. Could anything be more soporific than an indulgence of the presumption, to which every citizen should be entitled, that a sworn public official will perform the duties of his office according to the law as written?

It seems to me that equity's jurisdiction to prevent or restrain acts contrary to law, such as are here complained of, is not open to doubt and that the only question in regard to an exercise of such jurisdiction is whether the equitable remedy has been abated or suspended by the interposition of a legal remedy. If it has been, then equity will refrain from exercising its jurisdiction. But, the legal remedy must be *full, adequate* and *complete* before it can serve to oust equity's jurisdiction. With this view, the learned court below seems to be in agreement. That court said early in its opinion that "In approaching this case we recognize that the legal remedy must be adequate in order to oust jurisdiction in equity." Where the learned court below went wrong, in my opinion, was in concluding that the remedy by objections filed to nomination petitions or

papers within seven days after the last day for filing the petitions or papers, as provided by Sec. 977 of the Election Code, afforded the plaintiffs a legal remedy of required adequacy. With that, I cannot agree.

Aside from conferring the right to file objections to nomination petitions and papers, all Sec. 977 does is to clothe such petitions and papers with a conclusive presumption of validity if objections thereto are not filed within the time specified. That provision may be considered so to render conclusive all matter intrinsic to such petitions and papers,—the object of attack. But, I cannot believe that the legislature thereby intended to or did provide for the legally presumed validity of an obviously illegal official act outside of the petitions or papers. The illegal act basic to these cases was the Secretary's accepting and accrediting for filing what the law expressly says shall not be permitted to be filed. His action in such regard was wholly extrinsic to the papers. They (the papers) enter the case only for evidentiary purposes upon a determination whether the Secretary failed to discharge his duty when he allowed a nomination paper to be filed in a form which the law directs he shall not permit to be filed. The provision for filing objections, as contained in Sec. 977, does not embrace a proceeding for restraining the Secretary of the Commonwealth from committing an act contrary to law. Nor is such a remedy at law elsewhere provided. Consequently equity's jurisdiction was not thereby ousted. It continues to afford not only the full and complete remedy but actually the only remedy.

It may be suggested that Sec. 977 provides, inter alia, for the filing of objections relating "to material errors or defects apparent on the face of the nomination petition or paper, or on the face of the accompanying or appended affidavits" and that, therefore, the invalid affidavits could have been questioned by the filing of objections to the papers. But, that provision contemplates objections to such apparent material errors or de-

fects as are amendable. The provision itself plainly so implies. There is no duty under Sec. 977 to question by objection an error or defect in a nomination petition or paper which is admittedly unamendable and which violates the statute. In that situation, the Secretary of the Commonwealth commits an illegal act when he permits such a paper to be filed and, for that, Sec. 977 does not prescribe the remedy.

But even if there is a remedy at law to set aside nomination petitions or papers where the invalid affidavits appended thereto are unamendable, it is by no means a full, adequate and complete remedy. The nomination papers here in question were filed on the last day available for that purpose (May 9, this year). The seven days for filing of objections thereto automatically began to run from that date. But the Secretary of the Commonwealth had a "reasonable time" under the statute (Sec. 976) to examine the papers after their filing. Such papers do not actually become legally operative acts *until* the Secretary has accredited them for filing. See *Boord v. Maurer*, 343 Pa. 309, 314, 22 A. 2d 902. In the meantime, no one is bound to assume that the Secretary will not do his duty in regard thereto. And so, the seven days could readily be consumed before it becomes apparent that the Secretary will accredit and act upon papers legally invalid on their face. Can it be said that in such circumstances the remedy at law is so full and complete as to oust equity's jurisdiction? It is no answer to suggest that, if the Secretary evinced an intention to delay his action until the seven days had elapsed, he could at once be mandamused. Public officials are expected to perform their duties as prescribed by law and not have to be forced so to act by adversary proceedings.

Speaking of mandamus, I think the Secretary would have been well advised had he denied filing privileges to the nomination papers here involved and left the rectitude of his action in such regard to be determined by

a mandamus proceeding at the instance of the American Labor Party, its candidates or members. No question of jurisdiction could then have been raised to thwart a decision on the merits in the court below.

I should reverse the decrees and remand with directions that injunctions issue restraining the Secretary of the Commonwealth from certifying the nominees of the American Labor Party for places on the November ballot.