## Allardyce et al. v. The Luzerne County Board of Elections et al.

*Neville B. Shea,* for plaintiffs.

*R. L. Coughlin* and *Donald S. Mills,* for defendants.

PINOLA, J., June 22, 1951.—Plaintiffs seek a preliminary injunction to restrain the county board of elections from printing on the ballot label to be used at the coming primary, the names of the candidates for nomination for the office of sheriff on the Republican ticket in the order determined at a drawing held on June 1, 1951.

Plaintiffs contend: (1) That the drawing by lot was not in conformity with the statutory requirements, and (2) that the county board of elections had failed to set up regulations for the selection of positions on the ballot label.

Defendants insist that this court is without jurisdiction, and that plaintiff's remedy is at law by an action of mandamus.

Plaintiffs were at the place and the time set for the drawings for position. They testified that while they heard the clerk in charge announce that drawings would commence for positions on the Democratic ticket, they at no time heard any announcement of drawings on the Republican ticket until the announcement was made that Robert Sherrock had drawn position no. 1 for sheriff on that ticket. Notwithstanding this claim, all of the candidates participated thereafter in the drawing.

While Louis H. Coopey, Sr., did not actually draw, there was no point in having him draw because but one pellet was left in the box and but one position, no. 5, remained to be filled. It necessarily followed that his name should be assigned to that position. He was in

no wise affected by the failure of the clerk to let him draw the last pellet.

The clerks in charge of the drawing, Jacob Davis and Joseph Havrilla, Mr. I. G. Hosey, who had been designated by the board of elections to observe the drawing, and John Hahn, all testified that the drawing for positions for office of sheriff on the Republican ticket was announced loudly, that all persons could hear the same, that the pellets were placed in the box in view of all bystanders, and that the box was shaken before any pellet was withdrawn.

The numbered pellets were placed in a box customarily used for the selection of jurors and each candidate or someone for him was permitted to draw one. The drawer was assigned the position corresponding to the number on the pellet drawn.

Joseph Havrilla had charge of the box. He testified that he went to the doorway and called for Robert Sherrock. When he did not answer, Havrilla asked a bystander, John Hahn, to draw. Hahn drew no. 1. The second to draw was Joseph Bonfanti, who drew no. 3; Mr. Banta drew third and obtained no. 2; Mr. Allardyce drew fourth and obtained no. 4; Mr. Barney drew next and obtained no. 6. There being but one remaining pellet in the box, the clerk announced: "Mr. Coopey gets no. 7." Thereupon, Coopey called out: "I protest." The clerk then corrected himself and declared: "Coopey no. 5," because position 5 was the only one vacant. Again, Mr. Coopey said: "I protest." In neither instance did he state the nature of his protest. He said he was standing only five or six feet away when he heard "Sherrock no. 1", and that he was present during the remainder of the drawing. He had intended to ask the clerk to lay the pellets in front, to ask permission to see the box, and to have it shaken. However, he made no mention of any of these thoughts at the time of his protest.

At the conclusion of the drawing plaintiffs complained to Harry J. Williams, chief clerk of the county board of elections, who sent them to County Commissioner Robert Lloyd, a member of the board. Later a protest was lodged with the board at its meeting by counsel and then this action followed.

## Discussion

There is not the slightest doubt of the jurisdiction of this court in disputes of this kind. Defendants rely upon Thompson v. Morrison et al., 352 Pa. 616. In a later decision, Hellertown Borough Referendum Case, 354 Pa. 255, the court explained both Thompson v. Morrison, supra, and Kane v. Morrison et al., 352 Pa. 611. Chief Justice Maxey said (pp. 258, 259) :

"In making this contention appellant has fallen into error. He has confused the question of the jurisdiction of the court with plaintiff's right to obtain the aid of that court in his quest for what he deems to be his legal right. Appellant cites Kane v. Morrison, Sec'y., 352 Pa. 611; 44 A. 2d 53, as authority for the proposition he advances. That case gives no support to his contention. We there held that plaintiff was 'not entitled to the interposition of a Court of Equity' and that he had 'no standing to challenge in a court of equity the validity of these nominations.' We did not deny the court's jurisdiction in that case; we simply held that a proper case for the court's affirmative action had not been presented. We denied plaintiff's right under the facts of that case to 'resort to the forum' of a court of equity; we did not deny the 'forum's' power to adjudicate on such a subject matter. In the American Labor Party Case, 352 Pa. 576; 44 A. 2d 48, cited by appellant, we held that the court below, sitting in equity, 'had jurisdiction to hear the petition in question'. But that 'it could not, however, grant the requested relief for the reason that appellant

failed to prove compliance with the mandatory provisions of the Election Code.'

"Judges and lawyers sometimes erroneously use the words 'jurisdiction' and 'power' in relation to courts as interchangeable. In Skelton v. Lower Merion Township, 298 Pa. 471; 148 A. 846, this court made it clear that a plaintiff's failure to aver facts which would entitle him to what he is seeking does 'not raise a question of jurisdiction of the cause of action . . .' since jurisdiction relates 'solely to the competency of the particular court to determine controversies of the general class to which the case then presented for its consideration belongs.' In Heffernan's Appeal, 121 Pa. Superior Ct. 544; 184 A. 286, President Judge Keller said: 'The test of jurisdiction is whether the court has the power to enter on the inquiry; not whether it can, in the circumstances here present', grant what is asked for. 15 Corpus Juris, Sec. 35, p. 735, makes this statement: 'Such jurisdiction the court acquires by the act of its creation, and possesses inherently by its constitution; and it is not dependent upon the sufficiency of the bill or complaint, the validity of the demand set forth in the complaint, or plaintiff's right to the relief demanded, the regularity of the proceedings, or the correctness of the decision rendered.'

"That a court may ultimately decide that under the facts pleaded or proved it cannot grant the relief asked for does not constitute a renunciation on its part of its jurisdiction over the matter presented to it. Its jurisdiction is not limited to cases in which a good cause of action is presented. A cause of action inadequately or defectively stated does not thereby nullify the jurisdiction of the court to which the cause of action is submitted. Jurisdiction relates to the field of litigation in which a court has authority to adjudicate. Power refers to what a court can do in that field under a given set of circumstances. The court below correctly decided

that it had jurisdiction over the subject matter of the cause of action presented by the bill."

The second case cited by defendants' counsel, Downing v. Erie City School District et al., 360 Pa. 29, actually sustains our jurisdiction. The court declared (p. 34):

"As stated in Roth v. Marshall, 158 Pa. 272, 274, 27 A. 945,—'For an abuse of discretion or an act contrary to law the remedy is in the common pleas. . . .' "

And (p. 35):

". . . if the acts presently under attack should be deemed merely exercises of discretion, once it appears that they were based on a 'misconception of law', as the chancellor and the court en banc both concluded they were, equity looks with favor upon the questioning inquiry."

Going to the case proper, we find that the candidates were called to draw for positions in the order in which their names appeared on plaintiffs' exhibit 1.

A clerk had written the names on this sheet in the order in which she picked up the petitions. She was free to list them as she saw fit. No regulation had been adopted by the board of county elections regulating the order of drawing. It happens that two candidates whose names appeared on the list before that of Robert Sherrock withdrew, leaving Sherrock to be the first to draw.

The testimony of the four candidates that they did not hear the proper announcement was contradicted by the two officials and two bystanders.

The testimony being evenly balanced, we decide that there was compliance with the law as to announcement and the regularity of the preparation for the drawing and the execution of the drawing. This we are required to do because of the presumption that public officials have done their duty: Downing v. Erie City School District et al., 360 Pa. 29; 29 C. J. S. 218, §148.

We must, therefore, decide whether the system used to select positions is legal.

Art. IX, sec. 915 of the Election Code of 1937, P. L. 1333, 25 PS §2875, provides:

"Immediately after the last day fixed for filing of such nomination petitions . . . the county board, . . . shall fix a day for the *casting of lots*, in such manner as may be prescribed by the . . . county board, . . . for the position of names upon the primary . . . ballot labels."

After requiring notice to be given, it continues:

"In the event of any of said candidates not being present in person or by representative at the time of *casting of lots*, it shall be the duty of . . . the county board, . . . to appoint some person to represent such absentee. After said *lots are cast*, . . . the county board, . . . shall accordingly establish the order in which the names of said candidates are to appear upon the primary . . . ballot labels, and certify the same for placing upon the official primary . . . ballot labels."

Counsel for plaintiffs insist that the system used was a drawing of lots and not a casting of lots. In this they are correct.

Webster's New International Dictionary (second edition) points out the difference between the two in the following language:

"To draw lots, each competitor may place his lot (marked) in a receptacle from which a disinterested person draws one, on the owner of which the chance falls; or, each competitor may draw one of a series of lots, the chance falling upon the person who draws one previously specified. To cast lots, the lots are placed by the competitors in a receptacle which is then shaken until one falls out, the chance falling on its owner."

This explanation was cited with approval by the court in Longstreth v. Cook et al., 215 Ark. 72, 220 S. W. (2d) 433.

That the legislature is aware of this distinction is evident. The Act of April 1, 1834, P. L. 163, relative to incorporation of boroughs, provided, sec. 5:

". . . and in case any two or more candidates shall have an equal number of votes the preference shall be determined by lot, to be *drawn* by the inspector. . . ."

And, in the Act of March 8, 1856, P. L. 101, a supplement to an act creating Norristown Borough in Montgomery County, sec. 1 provides, inter alia:

". . . and that in all cases where the number of votes shall be equal for two or more candidates, the preference shall be decided by lot, to be *drawn* by one of the judges. . . ."

In the Election Code of 1937, art. XIV, sec. 1418, 25 PS §3168, provides:

"That in the case of a tie vote not otherwise provided for by law, the candidates receiving the tie vote shall cast lots before the county board . . . at 12 o'clock noon on the third Friday after the election, and the one to whom the *lot shall fall* shall be declared elected."

So, too, in dealing with the primaries, art. IX, sec. 923, 25 PS §2883, provides:

"In the case of a tie, the candidates receiving the tie vote *shall cast lots* before the county board . . . at 12 o'clock noon on the third Friday following the primary, and the one to whom *the lot shall fall shall* be entitled to the nomination."

Several witnesses testified that places on the ballot have been determined in this county by drawing of lots since 1940.

There is no evidence that any particular regulation was adopted by the county board of elections. This failure creates a very unsatisfactory condition. Their counsel objected to drawings made according to an alphabetical list of candidates and he objected to having drawings made on the basis of the time of the filing

of the petitions. He is satisfied only with the system used, which, as we pointed out, leaves a clerk free to list the names in any order she may choose, favoring a particular candidate, if she were so disposed.

It is commonly believed that a person who draws first has a better chance of obtaining favorable positions than persons who draw later and last. Whether this is so or not, we do not know. But we do know that if the county board of elections would comply with the law, this problem would not arise. If each candidate placed a pellet in a receptacle and it were shaken until a pellet fell out, their names would be listed on the ballot in the order in which the pellets appeared. We earnestly suggest that this be done. If they do not, in a proper case, they may be required to do so by the court.

In the present case, however, we cannot interfere because, in our opinion: (1) The statute is directory, and (2) plaintiffs acquiesced in the drawing of lots.

" 'When a statute directs certain proceedings to be done in a certain way, or at a certain time, the law will be regarded as directory and the proceedings under it will be held valid, though the command of the statute as to form and time has not been strictly obeyed; the time and manner not being the essence of the thing required to be done' ": Commonwealth ex rel. v. Eichmann et al., 353 Pa. 301.

Where the end can be accomplished, although the directions of a statute are not complied with, the directions are considered directory and not mandatory: Felts v. Edwards, 181 Ky. 287, 204 S. W. 145; 59 C. J. 1073.

In Deibert v. Rhodes, 291 Pa. 550, the court pointed out that:

"A mandatory provision is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the

observance of which is not necessary to the validity of the proceeding."

Applying this test and considering the object of section 915 of the Election Code and the consequences which would result from construing the particular provision as mandatory, we conclude that it is not mandatory. Though the word "shall" is used in the statute, it may be held to be merely directory when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to any individual, by giving it that construction: Commonwealth ex rel., v. Powell, 249 Pa. 144.

So, the selection of positions by drawing of lots was proper if the board had made, as they were required to make, regulations for the drawing. In the absence of any regulations plaintiffs could complain. However, they waived any irregularity and objection they might have by participating in the drawings.

Waiver has been defined to be an implied consent by an omission to object when the occasion gives proper opportunity. Generally where one has waived a right he is precluded from claiming anything by reason of it afterwards, and once waived the right is gone forever and cannot be recalled or reclaimed even in the absence of any change of position by the party in whose favor the waiver operates: 67 C. J. 314; Sartin v. Hudson et al., 143 S. W. (2d) (Texas) 817.

In Antoine v. Andrews et al., 150 S. W. (2d) (Texas) 293, the court held (p. 295):

"Having thus consented to participate in the election knowing of its providing no second nor third choice voting privileges, appellant was plainly estopped from using the secular courts in an effort to have undone what he thus consented to have done in the manner it was."

Here, we not only have a waiver, but we have affirmative action—participation in the method adopted by the county board of elections.

In Katz Nomination Papers, 65 D. & C. 13, objections were made to nomination papers four sheets of which did not contain the office which the candidate sought. The court held (p. 17):

"In not objecting to the failure of the petition to set forth specifically that four sheets do not contain the office which the candidate seeks respondent has placed himself in a situation analogous to that where a defendant in an ordinary action at law neither moves to strike off the complaint as insufficient, nor takes a rule for a more specific pleading. In this situation it is well established that such objections are deemed to be waived by such a failure and evidence covered by the general character of the averments of the complaint may be considered: Nark v. Horton Motor Lines, Inc., 331 Pa. 550 (1938); Lynch et al. v. Bornot, Inc., 120 Pa. Superior Ct. 242 (1935); Koenig v. Quaker City Cab Co., 87 Pa. Superior Ct. 403 (1926). We see no valid reason why the same rule should not apply in this case."

In In re Nominations in Winton Borough, 2 Lack. L. N. 13, where it was objected that certain Republicans were admitted to and allowed to vote at a caucus of Democratic voters, the court declared (p. 16):

"Where candidates—as it seems to me they did in this instance—without objection see these matters going on before their eyes and take the chances of the voters being in their favor, it comes with little grace to have them subsequently rise up and say the caucus was not regularly held or was not Democratic because a dozen Republicans out of 200 and over were allowed to vote at it. . . . Candidates cannot . . . expect to run the chance of a favorable verdict at the hands of the voters, and then when it goes against them come into Court and set up the things which they pass over at the time without objection."

We believe this case is subject to the general rule applicable to jury trials, that a party may not remain

silent and take a chance on the verdict and afterwards complain of matters which, if erroneous, the court would have corrected: Marcus v. White Star Lines, Inc., 316 Pa. 380; 6 Standard Pa. Practice 121.

Having participated in the drawing, plaintiffs cannot now question the system used merely because they are dissatisfied with the results.

Accordingly, we enter the following

*Order*

Now, June 22, 1951, the motion for preliminary injunction is denied.