## Meigs v. Tate

Before Sloane, P. J., Gleeson and McClanaghan, JJ.

*Edmund B. Spaeth, Jr.*, and *Bernard Segal*, for plaintiff.

*Levy Anderson*, First Deputy City Solicitor, and *David Berger*, City Solicitor, for defendants.

PER CURIAM, March 1, 1962.—Mr. Meigs' complaint in mandamus forks in two directions: One asks us to "command" the President of City Council of Philadelphia to set a date for an election; the other to "command" a primary. Both have to do with the City councilmanic vacancy in the Eighth Councilmanic District

of Philadelphia which came about when Judge Luongo, of the Federal District Court for the Eastern District of Pennsylvania, resigned as councilman to take his seat on the bench.

The first proposition is moot. Hon. James H. J. Tate, the then president of city council, set the special election date for Election Day, November 6, 1962. See section 2-101 of the Philadelphia Home Rule Charter. This appears to satisfy Mr. Meigs, and we need not master a question when there is none: cadit quaestio.

Mr. Meigs insists there be a primary for the nomination of councilmanic candidates for this Luongo vacancy, a primary, nominating, election on May 15, 1962.

Plaintiff's counsel speak well of the democratic process and its historic preference for a voters' primary, the nomination of candidates for public office by the voters concerned with such office. We, too, may prefer this nomination method. But Mr. Meigs and his counsel must remember, and do know, that method and plan of nomination and election, subject to constitutional requirements, is in the legislative hand: Winston v. More, 244 Pa. 447; Thompson v. Morrison, 352 Pa. 616, 623. And we may not go to the bottom of the legislative conscience, remove it and set ours in its place.

". . . We are not a Supreme, or even a Superior Legislature, and we have no power to redraw the Constitution or to rewrite Legislative Acts or Charters, desirable as that sometimes would be": Cali v. City of Philadelphia, 406 Pa. 290.

Our restraint upon the legislature is a constitutional restraint. Our power is to lay away only the unconstitutional legislative effort. We strive to correct the legislature only to remove its trespass upon our organic law, the Constitution. Agreeably, there is no such problem here.

As to the pertinent legislative enactment, we need no subtle criteria or remote interpretation. The centrality here is section 629 of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, the amending Act of May 23, 1949, P. L. 1656, 1657, 25 PS §2779, supp., a section which is part of article VI(b) and devoted exclusively to special elections and nominations for special elections. This sub-article entitled "(b) Special Elections" deals with unexpected vacancies including a ". . . member of the council or legislative body of any city, borough, town or township . . .": as added Act of May 23, 1949 P. L. 1656, 1657, 25 PS §2778.1 supp.

". . . This Amendment had the effect of modifying Section 602 by specifically allowing a special election to fill councilmanic vacancies, and in practical effect changed . . . the law with reference to a councilmanic vacancy as laid down in Commonwealth ex rel. Maurer v. Witkin, 344 Pa. 191, 25 A. 2d 317": Cali v. City of Philadelphia, supra.

Section 629, as amended, supra, prescribes how nominations are to be made for a ". . . member of the council . . . of any city . . ."

The candidates for this office, reads this section, are to ". . . be nominated by political parties, in accordance with the party rules relating to the filling of vacancies, by means of nomination certificates . . . prescribed in section 630 of this act [25 PS §2780, supp.] ; and by political bodies by means of nomination papers . . ."

This statutory delineation has full scope and is in accord to article XII, sec. 1, of our State Constitution, which permits a special election for city councilman, but does not set forth how such candidates are to be nominated. The legislature did just that in section 629, as amended, supra, and set forth in the next section

630 (the amending Act of 1949, P. L. 1656, 1658, 25 PS §2780 supp.), the number, form and requirements of nomination certificates. Clauses (d) and (e) of section 630 emphasize the party nominations prescribed in the previous section 629: "(d) That a quorum of the *committee, caucus or convention as provided by the party rules, duly convened* . . ." and "(e) The name . . . of the candidate *duly nominated at said meeting.*" (Italics supplied.) See Objections to Democratic Certificate of Nomination, 15 D. & C. 2d 268.

To us, it is quite clear that the legislature provided that nominations of candidates for the vacancy of city councilman shall be made by the political parties, through committee, caucus or convention and not by a primary. And this is what was meant in section 629, supra, by the clause ". . . in accordance with the party rules relating to the filling of vacancies, . . .", that is, by ". . . committee, caucus, or convention . . ." as the party rule may provide.

Mr. Meigs would have us say that "in accordance with the party rules . . ." means that, if a party rule provides for or permits a primary, a primary must be had. Party rules may differ; the Democratic party might have a rule permitting a primary, the Republican party, not, or conversely. The result would be that, as to one party, there would be a primary and, as to the other, no primary. This is flatly opposed to the basic idea of uniformity and equality in elections and nominations and is inconsistent with the plain dictates of election sense. Mr. Meigs' conception, when studied, expands to an absurdity, and that which is absurd is neither of the letter nor in the spirit of the law. See Statutory Construction Act of May 28, 1937 P. L. 1019, art. IV, sec. 52, 46 PS §552 (1). Indeed, "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pre-

text of pursuing its spirit": Statutory Construction Act, supra, 46 PS §551.

Mr. Meigs pursues the idea that the pertinent rule of the Democratic County Executive Committee permits or requires a primary. He cites in paragraph 23 of his complaint the rule of "the Democratic Party of Philadelphia," which, in pertinent part, reads "nominations for candidates to be voted for at special elections to fill vacancies when, under the Election Code of 1937 and supplements and amendments thereto, a primary nomination is impossible (i.e., when special elections are not held at the time of the regular elections and when such vacancy occurs or exists within sixty (60) days of the regular primary antecedent to such regular election) shall be filled as follows."

Assuming the party rule did permit a primary, it would be in contradiction of section 629, as amended, supra, and this section of the Election Code must triumph. No party can make its own election code, in whole or in part.

If we are to take the rule of the Democratic County Executive Committee, as amended, and it was our impression from conference that the amended rule was the rule agreed upon by both sides, then a councilmanic vacancy "for which the law provides that candidates therefor shall be nominated by political parties by means of nomination certificates, shall be filled upon the recommendation of the District Caucus in which the vacancy exists or happens." This language follows the idea of section 629, as amended, supra, and is, therefore, consonant with that section of the Election Code. See section 807 of the Election Code, 25 PS §2837.

There is no provision in the Election Code for nomination by a primary to fill a councilmanic vacancy at a special election. The absence of such provision in the

Election Code and the presence of provisions in other sections of the Election Code for nominations by a primary, (see, for example, 25 PS §§2753, 2754) points to the intention of the legislature not to have nominations by primary in this instance.

The Philadelphia Home Rule Charter provision, section 2-101, is not in question. This section, the only one having to do with councilmanic vacancies, calls only for a special election. It does not speak of any method of selection of candidates for a councilmanic vacancy. Hence, we turn, as we did, to the Election Code. We note, too, that the Act of April 21, 1949, P. L. 665, the First Class City Home Rule Act, 53 PS §13101, et seq., expressly requires in 53, section 13131, that elective city officers shall be nominated ". . . only in the manner provided by, and in accordance with, the provisions of the Pennsylvania Election Code and its amendments, for the nomination of municipal officers. . . ."

What we say does not put into opposition one section of the Election Code with another. Section 603 of the Election Code, as amended (25 PS §2753, supp.), requires a general Primary before each general election. But a Special election and a general election are distinct, one from the other. The fact that in this instance, they are concurrent does not merge them into one. It does not subject the special election to sections of the Election Code concerning and controlling general Primaries and general elections.

Mr. Meigs hangs to section 902 of the Election Code (25 PS §2862, supp.) which does recite that "All candidates of political parties, . . . for all . . . elective public offices within this State . . . shall be nominated . . ."; but he neglects the impressiveness of the important proviso: "except as otherwise provided in this act." This proviso was the amendment of May 23, 1949, P. L. 1656, 1660-61, which significantly took the

place of the original words "and in no other manner" and, significantly again, is part of the same amending act which amended section 629, supra. If the intention of the legislature was ever discernible, it is so here, that nominations for a councilmanic vacancy is in the separate category created in section 629, supra.

A considered examination of the circumstance and grasp of the law in the matter makes us conclude that this complaint in mandamus should be dismissed. It is so ordered.