**Jaspan v. Osser**

*Lawrence Goldberg*, for plaintiff.

*Matthew W. Bullock, Jr.*, and *Edward G. Bauer, Jr.*, for defendant.

GOLD, P. J., July 12, 1967.—Plaintiff, a resident and taxpayer of the City and County of Philadelphia, instituted this action in equity to restrain the City Commissioners of Philadelphia and the City of Philadelphia from certifying the name of John B. Kelly, Jr. (Kelly) as a candidate of the Democratic Party on the November 1967, ballot for the position of councilman-at-large in the City of Philadelphia.

The complaint alleges that five nominees were to be selected by the electors of the Democratic Party at the primary election held on May 17, 1967, for this office; that the unofficial tally indicates that Kelly held second position for this office; that Kelly does not meet the residence qualifications set forth in the Philadelphia Home Rule Charter, which provides that a councilman shall have been a resident of the city for at least one year, prior to his election, and, finally, that Kelly resides in Wynnewood, Pa., and not in Philadelphia.

The complaint prays that the city commissioners be enjoined and restrained from certifying Kelly as a nominee on the Democratic Party ticket for the position of councilman-at-large, and further that this

court order that the candidates on the Democratic Party ticket shall be the first five qualified candidates receiving a plurality of votes.

On appropriate petition, Kelly was granted leave to intervene as a party defendant in this action. Preliminary objections were filed by defendants. After the preliminary objections had been argued, plaintiff requested leave to amend his complaint in equity, which request was granted. The amended complaint in equity added another defendant, namely, D. Donald Jamieson, President Judge of Common Pleas Court No. 10, in his capacity as the judge who computes the votes cast at the May 17th primary, and whose duty it is to certify the results of the said primary election to the city commissioners.* The amended complaint makes another important change, viz., that Kelly did register as a Democratic elector in the City of Philadelphia on or about December 26, 1962, and that the said Kelly did in other ways hold himself out to be a resident of the said city and county; further, that plaintiff, in view of Kelly's outstanding reputation for integrity and honesty, had no reason to believe that Kelly was not a bona fide resident of the City and County of Philadelphia, and that, therefore, he did not ascertain the true facts of Kelly's residence until on or about May 24, 1967, namely, that Kelly lived at 451 Marino Road, Wynnewood, Montgomery County, Pa. For this reason, plaintiff alleges that prior to March 14, 1967, the last day for filing objections to nomination petitions, he had no knowledge that Kelly was, in fact, a nonresident of the City and County of Philadelphia.

---

* We have been unofficially advised that Judge Jamieson has certified the results of the primary election, with the exception of candidates for the position of councilman-at-large, pending the outcome of this litigation.

By agreement of counsel, the original preliminary objections filed by the city and by the city commissioners were considered as having been filed to the amended complaint in equity. This court sustained the preliminary objections and dismissed the complaint.

The basic question which must, perforce, be answered in this case is whether the Election Code provides the exclusive method of attacking a nomination petition of a candidate for the position of councilman-at-large. If this be the case, then we cannot disqualify Kelly.

In our opinion, the Election Code of June 3, 1937, P. L. 1333, art. 9, sec. 977, 25 PS §2937, forecloses the right of plaintiff, Jaspan, to attack the nomination petition of defendant Kelly after March 14, 1967. The Election Code provides an orderly method of attacking a nomination petition for all and any officers. The salient portions of the Election Code are as follows:

"All nomination petitions . . . filed within the periods limited by this Act *shall be deemed to be valid,* unless, *within seven days* after the last day for filing said nomination petition . . . a petition is presented to the court of common pleas . . . setting forth the objections thereto, and praying that the said petition . . . be set aside. . . . Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be *later than ten days* after the last day for filing said nomination petition. . . . On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over any other business before it, and shall *finally determine* said matter *not later than fifteen days* after the last day for filing said nomination petition. . . . If the court shall find that said nomination petition . . . was not filed by persons *entitled to file the same,* it shall be set aside". (Italics supplied.)

The last day to file nomination petitions was March 7, 1967; the last day to file objections to the nomination petitions was March 14th; the last day to hold a hearing on the objections was March 17th; the last day for the court to determine the matter was March 22nd. This chronological arrangement in the Election Code is understandable, for if the time is not limited by statute, objections to nomination petitions could conceivably be filed long after the candidate's name had been put on the ballot by the city commissioners, and then even to the very day of the primary election. That this provision is mandatory and cannot be waived is clear from the decisions of our Supreme Court: American Labor Party Case, 352 Pa. 577 (1945); Thompson v. Morrison, 352 Pa. 616 (1945); Turtzo v. Boyer, 370 Pa. 526 (1952). It is noteworthy that in Turtzo there was an allegation of fraud, but even under such circumstances the Supreme Court refused to waive the seven-day limitation.

In Sherwood v. Elk County Board of Elections, 33 D. & C. 2d 230 (1963), the qualifications of a candidate for councilman were challenged. In that case, the attack was made three days after the election. Properly, the court refused to take such action.

We, therefore, conclude that equity has no power to upset the clear mandate of the Election Code and that the Election Code means exactly what it says in the first portion of section 977, viz., that the nomination petition shall be deemed to be valid unless within seven days thereafter an appropriate objecting petition is presented to the Court of Common Pleas.

In view of our determination we normally would not proceed to decide the secondary issue, namely, the right of candidate Jaspan to have this court certify to the election court that he might be the nominated candidate, assuming that he received the sixth highest

number of votes for the position of Democratic councilman-at-large.

The law is abundantly clear that even where the winner of an election is disqualified for some proper reason, the person receiving the next highest number of votes is not automatically elected. In Commonwealth ex rel. McLaughlin v. Cluley, 56 Pa. 270 (1867), the Supreme Court held that a candidate for sheriff who received the second highest number of votes for that office was not elected because of the disqualification of the candidate receiving the highest number of votes. Our neighboring Court of Common Pleas of Bucks County followed the Cluley case in the matter of Bensalem Township Election Contest, 26 D. & C. 2d 433 (1961). See also Franklin Township Contest of Election of Justice of the Peace, 34 Westmoreland 173 (1952).

If the truth be known, candidate Jaspan waited until after the primary election to mark the course of action he would follow. If he had placed seventh or eighth on the unofficial returns, he would not have filed the within complaint in equity.

Under the circumstances of this case, under the Election Code and fortified by authority, this court is of the opinion that it has no jurisdiction to entertain the present action.